Last case of the afternoon is U.S. v. Figueroa. May it please the court, my name is Ralph Jacobs. I represent the appellant Antonio Figueroa. And with the court's permission, I'd like to reserve three minutes for rebuttal. Can I say I am most interested in the sentencing issue. I wish you could give us some argument on that. I think that is where we would like to spend most of the time. I certainly intend to address that, but I would also like to address the co-conspirator exception because I do think that's a significant issue as well and I'll try to divide my time appropriately. The co-conspirator issue arises in the context of a powerfully inculpatory statement attributed to Officer Figueroa's co-defendant Robert Bayard. It was not admissible under the co-conspirator exception to the hearsay rule. It was very prejudicial and for that reason alone I think the conviction ought to be reversed. Let me very briefly. It was not admissible under the co-conspirator exception. That's correct. And clearly this is a co-conspirator exception case. It's not a confrontation case. It's not a Bruton case. Correct. I think this Court's opinion in Berrios, which came after the trial in this case, made it clear that under current Supreme Court jurisprudence this is a rule of evidence case. But as the Court noted in footnote two in Berrios, the results are often the same. The values that underpin the confrontation clause are the same. Cross-examination is crucial to the truth-finding purpose. Rules of evidence are a baseline. But beyond that, there may be constitutional implications that even if the rules of evidence would permit this ability, some other reason of constitutional proportion may preclude it. That's correct. But what I'm saying is even as a matter of the rules of evidence Yes. I understand that. So I want to know why it doesn't fit under the exception. Under the co-conspirator exception. Let me take one minute and frame the issue. This was a prosecution of two officers who were patrol partners in Camden in the special operations squad. These are the guys who go out onto the streets of Camden and make arrests in high-crime neighborhoods. This was the second wave of prosecution. Three officers had pled guilty. They claimed that their fellow officers, Figueroa and Baird, were also involved. The defense theory, of course, was that Figueroa and Baird were not involved. They were merely at the scene of some of these arrests that the co-operators were lying. The issue is that one of the co-operators claims that Baird came to him after one of the arrests and said, Figueroa wrote a report that was F-ed up. To me, the framing It sure sounds like something that's in furtherance of the conspiracy to me. Well, I sure want these guys on board. I want them to know how to write a report and how not to. And if Figueroa is screwing around with a report, he better get it straight. That's in furtherance of the conspiracy. That abstract argument, i.e., that somehow Figueroa's report in question was an outlier. It was not properly executing this conspiratorial scheme and that Figueroa needed some schooling to bring him back into the way this conspiracy ought to be operated. That abstract argument was the argument that the government made. The problem is it is unsupported by the evidence. Indeed, it is belied by the evidence. And most powerfully What evidence? I mean, we're talking about a statement which a court must determine should be admitted or excluded and that that ruling be pursuant to 801D2E. Now, what's the other The evidence is the statement, the report itself. It's Government Exhibit 500. It appears at page 1844 of the appendix. And all of the reports for the incidents in question are in the appendix. If I can very briefly give you the flavor. But I'm trying to figure out why a statement or why a report should somehow trump a statement which is what is being sought to be admitted. Let me see if I can articulate my, your Honor, because I do think there is a powerful issue here. The, the, when, when Bayard, excuse me, when Parry, the trial witness, says Bayard came to me and said Figueroa's report was effed up. Parry was referring to a particular report. It was clear from Parry's testimony, because he talked about a particular address and a particular date, he was referring to Government Exhibit 500. And I can provide further context. There was, there was no question at all that that's what, what he was referring to. If you look at Government Exhibit 500, that report is no different from any of the other reports authored by Bayard or Figueroa during the entire course of the conspiracy. So what? Isn't it the fact of the statement and the content of the statement that matters here? That's what the government seeks to have for its import, for its possible effect on the hearer. I, I guess I, maybe I'm missing something, Your Honor. The, the. Well, I know I am. Okay. Because I cannot make a connection whatsoever between this report and the statement which is what counts. And let me say one other thing, in fairness, because I, I, I'm not trying to tell you how to argue your case. But notwithstanding the fact that the panel told you we are unanimous in wanting to hear about the sentencing argument, you wanted to spend time on this. You got a little more than five minutes. And that I think was implicitly saying about this issue, that dog won't hunt. Maybe you ought to go to the sentencing. I, Your Honor, I've been around long enough to know that, that I disregard that kind of helpful advice at my peril. I will take 60 more seconds in an effort to, to try and articulate what I think is a very powerful issue. The statement, the only thing that, that, that Bayard allegedly said was the report's effed up. To me, and I believe based on the evidence, the only is doing something wrong. It is Bayard saying from a position of innocence, he's doing something wrong. It's not, there's nothing at all about, about this statement somehow needs to be written differently to preserve the conspiracy. Because the statement is written in the same terms as all of the other statements. What I am saying is the only fair interpretation of this statement is Bayard is saying to a fellow officer, Figueroa lied on his report and that is bad. If, if Bayard had, had been quoted as saying those words, Bayard being the co-defendant sitting right next to him, clearly it would be inadmissible. What I'm saying is in context, that is exactly what Bayard is saying. Bayard is saying this report is a pack of lies. And, and the reason we know, to step back a second, Judge Kugler says it's ambiguous. It could mean that the conspirators are trying to teach Figueroa to write a report in a different way or it could mean that it's a pack of lies. I, I have tried to make the argument in as powerful terms as I can. I will, I will move on, but I, I, I, I urge the, the court to give it some consideration. On, on the sentencing issue, the real issue here is whether there is drug dealing, whether this is a drug transaction. And the key argument here is physically the only transfer of drugs is from wherever they were found on the street to the Camden Police Department evidence room. Well, they were held back at some point, weren't they, to use in other situations or, or planted or reserved in a tree or something? Stetzer says that he had drugs planted in a tree. Figueroa was not involved in that. Stetzer tells this as though this is. Well, but it's co-conspirator. But in terms of sentencing, it's not Figueroa's conduct. Where Figueroa comes on the scene, Stetzer gets the drugs from the tree, places it somewhere. Figueroa, either Figueroa or Stetzer, one or the other, but the only thing that Figueroa sees is drugs are given to the Camden evidence room. The remaining drugs are all found on the street somewhere. They may be misattributed to a defendant, but the only physical transfer is from the point of seizure to the police department evidence room. But the difficulty is that the way the guidelines are written so broadly, and the concept of distribution includes transfer, I need to have a theory or a principle, and it's not Apprendi, it's not Alleyne, it's not any of these, these cases, but I need to have a principle that says a sentencing judge can't do this, cannot do this. Because you can't, for sentencing purposes, consider something drug distribution, which is not under the law drug distribution. But if it fits in the definition, if distribution or if it fits under plain text. But when a citizen finds drugs on the street and turns it in, they are not distributing drugs. Well, I know that's, I mean, that is close to the position that was taken by Judge in Cortez Caban, and I am not without sympathy to that position. I mean, I just have to believe that this is not the kind of situation that the drafters of the, of the, of the guideline had in mind when they were talking about drug distribution. Or in the case of Cortez Caban, it is an actual prosecution, it wasn't a sentencing issue. But we still have to start with the text. And as Judge Rendell's question has suggested, to me, is how do we, how do we avoid that? Because it talks about the offense conduct. If distribution includes transfer, didn't we have transfer? But it's, when they talk about offense conduct, that's the criminal offense. And so it is implicit that we are talking about criminal activity. If a citizen finds drugs on the street and gives it to the Camden Police Department, they are not guilty of an offense. And so, by using, by the, the, the guidelines, using the phrase, offense. Well, but there's an exception for them in, is there not, isn't there an explicit exception that accepts out a, a police officer who's transferring or somehow moving drugs in the course of lawful activity? But, but what he was doing, I mean, we provide for that. Looking at the drugs, not about the false report. What he did with respect to the, the drugs, the physical transfer of the drugs, was lawful. He was taking them from where they were and turning them in. But it was not in the course of lawful activities, because he was disobeying the law as part, this was part and parcel. Not the drug distribution law. No, I know that. Thank you. All right, thank you. We'll hear from you and everybody. Counselor? How could Judge Kugler come up with this, such a very, very, very long sentence for this one defendant, where the others got off with less than four years? Okay, well let me go through all four of them, because I think when you, when you look at all four, it'll, it'll make more sense. The. This guy had no prior history, right? No, this was actually one month below. This was a one month downward variance or depart, wasn't partially one month variance below the guideline level. His guideline level was 121 to whatever the top of the range is. It was based on the drug distribution guideline, as I'm sure you're aware. But let me talk about the disparity with the other three. Stetzer was the other person who received the next highest sentence. He received, I believe, 48 months. If you look at his he had the exact same guideline range minus the three points. You take the three points off, he's down to an 87 at the bottom of the range. He got approximately one third off for cooperation. He testified at trial. That's perfectly understandable. Parry also started with the same guideline range, bottom of which was 87. He did significantly better. He was the 20 month. And the reason he did was because he was the first police officer who came in. He made the case. The other one who got the eight month sentence was Morris. The difference there was he was not in fact sentenced under the drug guideline. He was not involved in any of the drug distribution. He was done in for a shorter period of time in the conspiracy. He was the one who was injured early on in one of the incidents and he retired from the force. So he was in a different category altogether. So when you look at them, they're actually, I mean, Judge Kugler sat in on the trial, he saw them all testify, and he knew what their roles in the offense were. But I- I mean, the underlying offenses here, there's falsification of police reports that has a guideline range, there's testifying falsely, perjury has guideline range. Where does this drug distribution come from? Well, Your Honor, I mean, clearly drugs were used as an instrumentality of this crime. And there is some poetic justice here in the sense that what the officer was trying to do was he was trying to gild the lily and send these people to jail for more time than they were otherwise entitled to, in particular instances, by attributing more drugs to them. So it sort of came around back at him in that respect. So rather than, and some of them obviously did go to jail and went to jail for significant amounts of time before they were overturned, and the city of Camden obviously- Can the concept of poetic justice be written into an opinion in any way, I'm wondering? Well, I think the point- It's a tough sell, isn't it? I think the point that Judge Rendell was making is, is there anything in the guidelines that prohibits this? I mean, I think Judge Kugler had a range of options here. And I'm not convinced that every judge would have applied the drug guideline here. My strong suspicion is not everyone would have. But the question is, was it within his discretion? In fact, as the opinion, as the separate opinion of Judge Torello and Cortez Caban makes much of, there ain't any other cases like this out there. Yeah, that finds that a particular weight, frankly. I don't know that I would give it as much weight, but it is something that's worthy of note. Yeah, and they were involved with a prosecution as opposed to a sentencing. And you do, in a sentencing context, you have to look for analogies and you have to make some value choices about what the best analogy is here. But when you're using drugs as an instrumentality of the crime, as they were here, in order to make a case, make a case stronger to take. In some instances, people who weren't associated with the drug at all and essentially planted on them. But what about the textual argument? Isn't that your strongest argument here? Yes. Since this certainly is not the standard paradigm one thinks about when he or she is thinking about drug distribution. Yeah, I mean, we're urging you to follow the reasoning of the First Circuit and Cortez Caban, and they rely on the plain language of the statute. They rely on the plain language of what it means to distribute. And here we have a distribution. We have a transfer from, this was behind the tree, and in fact, Figueroa was involved in it. Now, Figueroa didn't stash them behind the tree. He's right to say that Stetzer had stashed them. But Figueroa wrote this particular report. They were brought out. This was one of the things that Figueroa participated in. So he's implicated in this particular transfer that goes from behind the tree to, I guess, there's no indication that they were actually planted on the individual, but brought to the evidence room and then attributed to the individual here. Who makes the decision to push a certain guideline range? I guess, was this in the PSR? It was in the PSR, Your Honor. I believe it did originate from our office, though. That's my understanding just from side conversation. But in the record, the PSR has this. They produced that little chart that I put in my brief that showed, and again, the guideline says you look at what the underlying offenses are. And they did a calculation for each underlying offense. And for this one, as you say, the indictment charged planting drugs as one that was clearly charged in the indictment. And as Judge Kugler said, this was an important part of the case. The application note says, any conduct established by the offense of conviction that constitutes an offense under federal, state, or local law. I guess the question is, what was established by the offense of conviction here? Well, clearly under Cortes Caban, this court follows that, the majority opinion there, that the act of planting drugs by police officers is distribution. And frankly, even Judge Torella, in his separate dissent, didn't really take issue with that. Well, but Cortes Caban involved a charge, precisely, of drug distribution. Oh, sorry. And a jury verdict. And so the issue was sufficiency. Sufficiency of the evidence. Right. But we didn't, I mean, here we didn't charge perjury.  This is a civil rights thing. Right, you didn't. You charge per count one, conspiracy to deprive others of civil rights. It was what, a three count? Was it a three count indictment? It was, actually it was six. But what you do, you do as an object of the conspiracy in your indictment, go on to list planting of evidence, using crop and growstuff and drugs, adding drugs, stealing drugs. Yeah. I mean, the guideline's clear. I don't think there's any dispute here that what you're supposed to do at sentencing is to figure out what the underlying conduct, what it would be as an offense. It could be a state offense. It could be a federal offense. And that's where the judgment is implicated. That's where Judge Kugler has to say, what is it that was proven here? And he concluded that one of the things that was proven was drug distribution under the First Circuit's reasoning. Now, it would be a different case if drug distribution had a higher statutory maximum than the civil rights violation itself. Would it not, under Apprendi, would it not have been problematic? Oh, well, we couldn't have sentenced him beyond the statutory maximum here, which was 10 years plus two. There's no, we wouldn't have sought that, and we'd never contended with that. But that's, again, they weren't convicted of that crime. That's what the judge used by analogy in order to get to the proper guideline. We're convicted of a conspiracy to violate civil rights. Yes. That's, I'd say, that's our position. There's nothing impermissible in the guidelines that says he can't exercise his discretion in this manner. We think the First Circuit decision was, in fact, well-reasoned. And we think even the dissent here isn't really keyed into, it was keyed into the possession with intent to distribute, but not distribution, which is the problem that we're relying on here. So it's not. Well, he even got into an Actus Reus versus intent dichotomy, if I recall. You're talking about the dissent and the second opinion. Yeah. Yeah. Yeah. Would you address the statement issue that was raised by your? Sure. Your Honor, Judge Kugler made a factual finding. He found, by preponderance of the evidence, that this statement was in furtherance to the conspiracy. Basically, there were two choices put before him. There was the choice that the defendant put forward, which was, Mike. I'm sorry. You said he made a factual determination. What was that? He found, by a preponderance, did you say where or what? What was that factual determination? The finding was, by preponderance of the evidence, that the statement made by the defendant, which he's complaining about, the report being screwed up, was in furtherance to the conspiracy. It was made by a conspirator during the course of the conspiracy in furtherance to the conspiracy. He had really two choices. I mean that. Did he make that at the time? At the time that the evidence was moved? Well, he. It was made subsequently, I believe.  It was clarified at the end. The way it actually came about was. Exactly. You'd agree, wouldn't you, the better practice would be for a trial judge to make that determination on the spot when the evidence is moved or when someone seeks admission. Absolutely, Your Honor. And he did not do that. Absolutely, Your Honor. I mean, the way it came about was there was a pretrial hearing, but he did telegraph what he was looking for. He said, look, I haven't seen the evidence yet, but if the evidence comes in in this way, then I'm going to find it's admissible. When the time came, the original objection actually was from counsel for Bayard, but it is preserved. Counsel, Mr. Jacobs, did preserve it. He said for the reasons we previously argued, and the judge has said denied. And then he clarified at the end that what he had presaged at the beginning was in fact the basis for his holding. So there are certainly plenty of facts in the record that would support the interpretation that he gave it. Well, Your Honor, on this particular count, the evidence actually was quite strong. What the jury seemed, and the jury did not find for us on all counts, what the jury seemed to be looking for was corroboration. And on this one, you had Officer Galiazzi, who was not implicated in any wrongdoing at all. And he came before the court. Let me just say what the report said that ended up being the falsehood. Basically, according to Officer Figueroa, what happened was they engaged in a high-speed chase. They went to the residence, and in plain view, when they crossed the threshold into the house in plain view, he found a gun. Officer Galiazzi said two things. He said there was no high-speed chase. I would have heard about that on the radio. That just didn't happen. But more importantly, Galiazzi said, I found the gun. It was in the upstairs bedroom. Now that, obviously, was corroborated by the three cooperators we had. The cooperators had some, you know, had some, you know, problems. Yeah. I mean, the jury didn't accept it based on everything they said. But for the two counts of conviction, there was corroboration from officers who were not implicated in any wrongdoing. And in that respect, also there were phone calls, there were phone records that verified this because what the cooperators said was that after this, they had seized some money as well. And when they got off their shift at 2 o'clock, they were supposed to split it up. And I was waiting for Figueroa to get the money, and I called him eight or ten times between 2 o'clock or 5 o'clock, and he never showed up. And the telephone toll records showed that, in fact, phone calls were made on a regular basis between 2 and 5. The phone, they never got through. But there was at least corroboration here that the jury found very powerful. And certainly the testimony of the unbiased officers corroborated what all three other cooperators had said as well. So that was a strong one. And interestingly, I mean, the argument is that that was, that something untoward must have been going on because that was, Bayard was acquitted on that while Figueroa was convicted. In fact, our witness Scaliazzi, for better or worse, said that Bayard did not, wasn't involved, didn't say wasn't involved, but he said he was in the car the whole time. So he didn't, when they came to the house and he did the search, Bayard wasn't there. So it actually gave the jury a good reason to separate the contact between the two, something quite different from this report, which Judge Kugler said really wasn't a big deal in this argument. So I don't think that there's much there. If there are no further questions from the court, I'm happy to relinquish the rest of my time. Thank you, Your Honors. Thank you. Cortez Caban is distinguishable because the conduct at issue constituted a criminal offense. And it's distinguishable in the crucial factual way because in Cortez Caban, the defendants, according to the First Circuit, intended to introduce the drugs into society's illicit channels. In fact, at 691 F3rd at 23, note 26, the court says that the defendants in Cortez Caban transferred the drugs to known drug leaders and dealers. That is criminal conduct. Well, they were charged with it, right? I mean, isn't that really the point? They were charged with drug use. But if a person finds drugs on the streets of Camden and turns it into the Camden police evidence room, they cannot be charged with a criminal offense. That is not a criminal offense. And if they're using drugs as an instrumentality of crime and what they are doing with it fits within the definition of in the course of non-lawful conduct, which is what you'd have to find for these police officers, how does that not fit? Figueroa didn't plant drugs. He didn't take drugs from the trees and put them in somebody's pocket. What he did is he took drugs found in a particular place and turned them in. That is not an instrumentality of the crime. The crime But we look at the total conspiracy also. You know, it's not we're not just confined to what he did, are we? The offense conduct should apply to the particular defendant. In a conspiracy, conduct chargeable for one and the other? I think it's not the same as the scope of criminal liability. It's a narrower, I think the court's cases on that are clear. That is my distinction of Cortez Caban. I will take my last one minute to at the risk of And it is a risk. Go ahead. It's your time. You have a minute. 45 seconds, 44. How about hearing you on the harmless therapy issue? Would you speak to that? Figueroa was convicted and Bayard was acquitted. The co-conspirator, I'm sorry, the co-operator evidence was clearly disbelieved. The other witnesses were clearly disbelieved with respect to Bayard. The case was almost identical. There are a few minor differences. But other than that, almost identical with respect to the two. The only difference is this dramatic finger pointing by his patrol partner saying you wrote a false report. That's not anything which furthered the conspiracy. Because when you look at all of the reports, this report was not an outlier to the scheme. The only interpretation that the jury could give to this report is it was an accusation that was not cross-examined. Thank you. Thank you. The case was well argued. We'll take it under advisement.